In re **ALLIED RESPIRATORY CARE SERVICES, INC., Debtor.**

James S. **FELTMAN, Trustee for Estate of Allied Respiratory Care Services, Inc., Plaintiff,**

v.

**BANKATLANTIC and Tralins and Richman, Defendants.**

Bankruptcy No. 93–13673–BKC–AJC.
Adv. No. 94–1239–BKC–AJC–A.

United States Bankruptcy Court,
S.D. Florida,
Dade Division.

April 18, 1995.

David C. Profilet, Profilet & Associates, Miami, FL, for Tralins and Associates.

Angel X. Armas, Jenner & Block, Miami, FL, for the Trustee.

Mark F. Booth, Rogers, Morris & Ziegler, Ft. Lauderdale, FL, for BankAtlantic.

## MEMORANDUM DECISION GRANTING MOTION FOR SUMMARY JUDGMENT OF TRALINS AND RICHMAN

A. JAY CRISTOL, Chief Judge.

THIS MATTER came before the Court for a hearing on March 8, 1995, on the Motion for Summary Judgment of Tralins and Richman, dated February 17, 1995. By its motion, Tralins and Richman, now known as Tralins and Associates, a Florida professional association ("Tralins"), seeks the entry of summary judgment in its favor, pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, on (i) the complaint filed by James S. Feltman, trustee (the "Trustee") for the estate of the debtor, Allied Respiratory Care Services, Inc., against Tralins and BankAtlantic; and (ii) Tralins' cross-claim against BankAtlantic. Because the Court finds no disputed issues of material facts, the matter is ripe for summary judgment.

## I. FINDINGS OF FACT

Prior to the commencement of the debtor's bankruptcy case on February 7, 1994, Tralins represented the debtor in an action in the Dade County Circuit Court to collect in excess of $100,000 due from Irwin Neswitz, individually and as personal representative of the estate of Gertrude Neswitz ("Neswitz"), St. Francis Barry Nursing and Rehabilitation and St. Francis Barry Health Services, Inc. (collectively, "St. Francis"). St. Francis counterclaimed against the debtor for a set-off in excess of $100,000 and also sought to recover from Neswitz.

In May, 1993, Tralins successfully resolved the debtor's claim against Neswitz for the sum of $21,000 which Neswitz paid in the form of a cashier's check. On September 21, 1993, Neswitz's cashier's check was deposited in Tralins' attorneys trust account pursuant to an escrow agreement with St. Francis, to be disbursed upon resolution of the debtor's dispute with St. Francis (the "Neswitz Settlement Funds").

By the time the debtor filed its bankruptcy petition, Tralins had negotiated the material terms of a settlement with St. Francis. Under that settlement, St. Francis would pay the debtor $14,000 (the "St. Francis Settlement Funds"; the Neswitz Settlement Funds and the St. Francis Settlement Funds are collectively referred to herein as the "Settlement Funds") and release its claims against the Neswitz Settlement Funds being held in Tralins' trust account, so that the debtor could receive these funds as well. Thus, through Tralins' efforts, the entire Neswitz/St. Francis matter, including St. Francis' claims against the debtor, would be resolved in the debtor's favor by the debtor's receipt of $35,000. Tralins' attorneys' fees and costs associated with the matter totalled $18,490.65, and the parties have stipulated that such amount is reasonable and constitutes a valid and perfected attorneys charging lien on the Neswitz Settlement Funds, subject to this Court's determination of whether BankAtlantic's alleged security interest is prior to Tralins' charging lien. *See* Agreed Order Denying in Part and Granting in Part BankAtlantic's Objection to the August 25, 1994 Agreed Order Granting the Ore Tenus Motion of Chapter 7 Trustee James S. Feltman to Approve Settlement and Compromise with the Law Firm of Tralins & Richman and St. Francis Barry Nursing and Rehabilitation and St. Francis–Barry Health Services, Inc. and denying Without Prejudice as Moot Tralins' Motion for Relief from the Automatic Stay and Motion to Compel the Trustee to Abandon Property of the Estate, paragraph 3.e., dated December 3, 1994 (the "Agreed Settlement Order").

On March 1, 1994, BankAtlantic filed a motion for relief from the automatic stay imposed under section 362 of the Bankruptcy Code, seeking to modify the stay to permit BankAtlantic to proceed against the debtor's inventory, accounts receivable and other property against which BankAtlantic alleged it had a valid and perfected first priority security interest. BankAtlantic further alleged that the estate lacked an equity in the property.

No party in interest, including the Trustee, objected to BankAtlantic's stay relief motion and the Stay Relief Order was entered without a hearing and in accordance with Local Rule 401(C).

Thereafter, the Trustee and Tralins finalized the settlement with St. Francis and sub-

mitted it to the Court for approval at a hearing held August 11, 1994. The Court entered an order dated August 25, 1994 (the "August 25 Order"), approving the settlement and affording parties in interest twenty days to object. The August 25 Order was duly served on BankAtlantic, which timely filed an objection to the settlement. BankAtlantic's objection was resolved by the entry of the Agreed Settlement Order, which again approved the settlement with St. Francis as fair and reasonable and validated Tralins' lien on the Neswitz Settlement Funds, but also provided the following mechanism for the determination of the nature and extent of the parties' interest in the Settlement Funds:

> e. Jenner & Block and Tralins, as escrow agents, shall retain the Settlement Funds in interest bearing accounts pending further order(s) of this Court as to the extent, validity and priority of any lien claims or other claims, such as surcharges, against the Settlement Funds by BankAtlantic, the Trustee and Tralins only; provided, however that this Order and the August 25, 1994 Order shall be deemed to constitute a determination that Tralins holds a valid and perfected lien at least to the extent of $18,490.65 of [the Neswitz Settlement Funds], subject only to a subsequent determination of the priority of such lien, the validity, priority and extent of BankAtlantic's lien and any other claims of Tralins against BankAtlantic and the Settlement Funds. Within ten (10) days of the date of this Order, the Trustee shall commence an action, either by motion or adversary proceeding (as agreed among the Trustee, Tralins and BankAtlantic) to determine the appropriate distribution of the Settlement Funds;
>
> f. The Court shall retain jurisdiction for the purpose of enforcing the terms of the settlement between the Trustee and St. Francis and to enter an order pursuant to [the preceding subparagraph].

Agreed Settlement Order, paragraph 3.

On December 13, 1994, the Trustee commenced this adversary proceeding against BankAtlantic and Tralins by filing a complaint in which the Trustee (1) objects to the proof of claim filed by BankAtlantic (Count I); (2) seeks to invalidate BankAtlantic's lien (Count I); (3) seeks to compel turnover of property of the estate (Count I); (4) seeks to equitably subordinate BankAtlantic's claim (Count II); (5) requests an accounting from BankAtlantic (III); and (6) seeks to surcharge BankAtlantic and Tralins' collateral (Count IV).

On January 9, 1995, Tralins answered the complaint and cross-claimed against BankAtlantic (1) to determine the priority of BankAtlantic's alleged lien on the Neswitz Settlement Funds relative to the priority of Tralins' charging lien (Count I); (2) to surcharge BankAtlantic for the fees and costs due Tralins in rendering the services which produced the Settlement Funds (Count II); (3) to recover for unjust enrichment (Count III); and (4) to recover in quantum meruit (Count IV).

## II. CONCLUSIONS OF LAW

At the hearing on Tralins' summary judgment motion, the parties agreed that to the extent BankAtlantic holds a valid and perfected security interest in the debtor's accounts receivable,[1] whether BankAtlantic's lien would extend to the Neswitz Settlement Funds as proceeds of such collateral turns on section 679.306(4) of the Florida Statutes,[2] which provides:

> In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:
>
> (a) In identifiable noncash proceeds and in separate deposit accounts containing only proceeds;
>
> (b) In identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a

---

**1.** The Trustee continues to dispute the validity, priority and extent of BankAtlantic's lien, and this order is without prejudice to the Trustee's right to do so.

**2.** Section 679.306(4) of the Florida Statutes is Florida's codification of section 9–306(4) of the Uniform Commercial Code ("UCC") unaltered and in its entirety.

deposit account prior to the insolvency proceedings;

(c) In identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and

(d) In all cash and deposit accounts of the debtor, in which proceeds have been commingled with other funds, but the perfected security interest under this paragraph (d) is:

   1. Subject to any right of setoff; and

   2. Limited to an amount not greater than the amount of any cash proceeds received by the debtor within 10 days before the institution of the insolvency proceedings less the sum of:

   a. The payments to the secured party on account of cash proceeds received by the debtor during such period; and

   b. The cash proceeds received by the debtor during such period to which the secured party is entitled under paragraphs (a) through (c) of this subsection.

■ Under 9–306(4)(a)–(c), the secured party prevails as to (i) identifiable noncash proceeds and separate deposit accounts which contain only proceeds; (ii) identifiable cash proceeds in the form of money not commingled with other money or deposited in a bank account prior to bankruptcy; and (iii) identifiable cash proceeds in the form of checks and the like which are not deposited in a bank account prior to the bankruptcy proceedings. If the proceeds have been commingled with other cash or in a deposit account, the formula provided in 9–306(4)(d) governs. J. White & R. Summers, Uniform Commercial Code § 23–7 at 1103 (3d ed. 1988).

### A. IDENTIFIABLE NONCASH PROCEEDS AND SEPARATE DEPOSIT ACCOUNTS: 679.306(4)(a)

■ Section 679.306(1) of the Florida Statutes defines "proceeds" as:

whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds.... Money, checks, deposit accounts, and the like are "cash proceeds". All other proceeds are "noncash".

Under this definition, the Neswitz Settlement Funds constitute "cash proceeds", not "noncash proceeds". Further, the Neswitz Settlement Funds were deposited to Tralins' attorneys trust account, which presumably contained funds of clients other than the debtor, and thus would not have contained only proceeds of BankAtlantic's collateral. Accordingly, section 679.306(4)(a) is inapplicable.

### B. IDENTIFIABLE CASH PROCEEDS IN THE FORM OF MONEY: 679.306(4)(b)

■ Section 679.306(4)(b) is inapplicable as well because the Neswitz Settlement Funds were paid by "check" and not by "money". Section 679.306(4)(b) only deals with proceeds in the form of money, which is defined at section 671.201(24) of the Florida Statutes,[3] as "a medium of exchange authorized or adopted by a domestic or foreign government...." Tralins received a (cashier's) *check* for the Neswitz Settlement Funds. A check is defined in section 673.1041(6), made applicable to Article 9 by section 679.105(3), as:

a draft, other than a documentary draft, payable on demand and drawn on a bank or a cashier's check or teller's check. An instrument may be a check even though it is described on its face by another term, such as "money order."

F.S. § 673.1041(6) (emphasis added).

■ Even if Tralins had received the Neswitz Settlement Funds in the form of "money", BankAtlantic would not prevail because the Funds were deposited to Tralins' trust account, which is a "deposit account." BankAtlantic contends that Tralins' trust account does not constitute a "deposit account" for purposes of 679.306(4) and that the Neswitz Settlement Funds could not have been commingled in such account because the

---

**3.** The general definitions provided in section 671.201 of the Florida Statutes (Article 1, Part II of the UCC) are applicable throughout the UCC as adopted in Florida. F.S. § 679.201.

Florida Bar requires its members to maintain client funds in their possession separate from other client funds.

A "deposit account" is defined as "a demand, time, savings, passbook, or like account maintained with a bank, savings and loan association, credit union, or like organization, other than an account evidenced by a certificate of deposit." F.S. § 679.105(e). Tralins' trust account is a demand account maintained with a bank. What makes it special is that the funds deposited in it are held in trust for the benefit of persons other than the attorney who establishes it, subject to the Rules Regulating the Florida Bar; it is still a deposit account under the UCC. *See* F.S. § 679.105(1)(e).

■ Furthermore, BankAtlantic's assertion that the Neswitz Settlement Funds could not have been commingled in Tralins' trust account because the Florida Bar requires its members to maintain client funds in their possession separate from other client funds is not supported by the Rules Regulating the Florida Bar ("Fla.Bar R."). What the rules require is that an attorney maintain a bank account separate from his own, Fla. Bar R. 5–1.2(b)(1), keep detailed records to account for the funds, *id.*, and follow strict accounting procedures, Fla.Bar R. 5–1.2(c). Nothing requires the attorney to segregate one client's funds from another's. Indeed, Rule 5–1.1(g) even contemplates that client funds will be commingled, in providing certain limited circumstances in which the attorney may make a disbursement from a trust account on uncollected funds.

Thus, BankAtlantic's reliance on 679.306(4)(b) to establish its lien on the Neswitz Settlement Funds is misplaced.

### C. IDENTIFIABLE CASH PROCEEDS IN THE FORM OF CHECKS: 679.306(4)(c)

As discussed above, the Neswitz Settlement Funds were paid in the form of a cashier's check which was deposited to the Tralins trust account. Because the check was deposited in a deposit account, as with 679.306(4)(b), 679.306(4)(c) is inapplicable.

### D. CASH AND NONCASH PROCEEDS COMMINGLED WITH OTHER FUNDS: 679.306(4)(d)

This leaves only 679.306(4)(d) to afford BankAtlantic a lien on the Neswitz Settlement Funds. However, application of (4)(d) requires that the proceeds be received by the debtor within ten days before the commencement of the bankruptcy case. It is undisputed that the Neswitz Settlement Funds were paid long before the ten-day period of (4)(d) and accordingly 679.306(4)(d) is also inapplicable.

### III. *CONCLUSION*

■ Because the Court finds that the Neswitz Settlement Funds do not "fit" within any of the categories of proceeds listed in subparagraphs (a) through (d) of section 679.306(4), the Court grants summary judgment in favor of Tralins on Count I of the Trustee's complaint and Count I of Tralins' cross-claim. Consistent with the August 25 Order:

1. Tralins shall immediately retain $18,-490.65 of the Neswitz Settlement Funds, plus interest on such amount, and apply the same in satisfaction of Tralins' secured claim as filed against the debtor's estate on May 17, 1994; provided, however, that Tralins shall continue to hold an allowed general unsecured claim against the estate totalling $17,-900.61 without the necessity of filing an amended proof of claim, which amount shall not be subject to setoff, objection or subordination by the Trustee or any other party in interest.

2. Tralins shall immediately pay and deliver the balance of the Neswitz Settlement Funds totalling $2,509.35, plus interest on such amount, to the Trustee by check made payable to James S. Feltman, Chapter 7 Trustee for Allied Respiratory Care Services, Inc. Such funds shall be deemed free and clear of any lien in favor of BankAtlantic.

3. The funds paid to the Trustee under paragraph 2 above, shall be in full and complete satisfaction of any and all claims of the Trustee that have been or could have been asserted against Tralins.

4. The Trustee and Tralins shall execute, deliver and exchange the releases provided under the August 25 Order.

5. The Court retains jurisdiction for the purpose of enforcing the foregoing.

In accordance with Rule 9021 of the Federal Rules of Bankruptcy Procedure, the Court will enter a separate final judgment.